No. 65,906

RUSSELL HOWARD COLLINS, *Appellant,* v. DOUGLAS COUNTY, KANSAS; BOARD OF COUNTY COMMISSIONERS FOR DOUGLAS COUNTY, KANSAS; and WAKARUSA TOWNSHIP, *Appellees.*

(822 P.2d 1042)

Opinion filed December 6, 1991.

*Bryson R. Cloon,* of Cloon & Bennett, of Overland Park, was on the brief for appellant.

*David R. Erickson, Kristopher A. Kuehn,* and *Jana V. Richards,* of Blackwell Sanders Matheny Weary & Lombardi, of Overland Park, were on the brief for appellees Douglas County, Kansas, and Board of County Commissioners for Douglas County, Kansas.

*Robert W. Fairchild,* of Riling, Burkhead, Fairchild & Nitcher, Chartered, of Lawrence, was on the brief for appellee Wakarusa Township.

The opinion of the court was delivered by

SIX, J.: This is a tort claims act "failure to warn" personal injury case. The result in the trial court was summary judgment for both defendants.

Russell Howard Collins sued the Board of Douglas County Commissioners (the Board) and Douglas County (County) and Wakarusa Township (Township) for personal injuries resulting from his dive off a low-water bridge.

The issues for resolution require our interpretation of a bridge maintenance statute, K.S.A. 68-1104, and our analysis of the discretionary function and signing exceptions to the Kansas Tort Claims Act (KTCA), K.S.A. 75-6104(e), (h).

We ground our summary judgment affirmance (1) for the Township upon K.S.A. 68-1104 as the Township had no bridge maintenance responsibility, and (2) for the County upon K.S.A. 75-6104(e) and (h), as the posting of either "no diving" or "shallow depth" signs or the installation of a depth gauge indicator was discretionary.

Our jurisdiction is under a K.S.A. 20-3018(c) transfer to this court.

## Facts

Collins dove into a rural creek from a low-water bridge located on a Wakarusa Township road in Douglas County. He broke his neck, resulting in quadriplegia. Collins alleged in his petition that the Township and the County had knowledge that the creek was used by local residents as a swimming area. He also asserted that the Township and County had altered the depth of the creek bed by dumping rock into the creek at the location of his dive. Collins contended that the Township and County were negligent in failing to warn of the dangerous condition of the "swimming area" by not posting either a "no diving" or a "shallow depth" sign, or by not installing a depth gauge or indicator. Collins filed an amended petition asserting gross and wanton conduct.

## Collins' Contentions

Collins asserted that on prior occasions he had been swimming in the creek and that the water had been over his head. Collins furthered asserted that the Township and the County: (1) knew that the creek area where he was injured had been used frequently as a "swimming hole" and (2) dumped rocks and/or other debris in the creek, changing the depth to approximately three feet. To support his assertions, Collins attached an affidavit of Dave Hill, an insurance adjuster assigned to investigate the accident. Hill stated that he was told by Roger Barnes, the Township foreman, that people swam in the creek and that the County dumped rocks in the creek where the accident occurred.

Collins advanced the additional contention that there are manuals and written guidelines for construction, maintenance, and repair of low-water bridges and waterways and for control of waterway erosion. Collins referenced his supplement to his designation of expert witnesses in support of his written guideline assertion. In his expert witness supplement, Collins stated that Dr. David Parr was expected to testify that such manuals and guidelines exist and that failure to follow the manuals and guidelines was gross and wanton negligence.

Collins reasons that (1) the act of placing signs at the bridge was not discretionary; consequently, there is no immunity under the KTCA; (2) K.S.A. 8-2003 adopts the Manual on Uniform Traffic Control Devices (MUTCD), thus establishing a statutory duty and written guidelines for the placement of warning signs; and (3) once the Township and the County voluntarily undertook the inspection, repair, and maintenance of the creek area, the tasks were ministerial and consequently unprotected by the KTCA discretionary function exception.

### The County's Contentions

The County filed a motion for summary judgment, contending that the decision to place either a warning sign or a depth indicator is discretionary; therefore, it is immune from liability under the KTCA, K.S.A. 75-6104(e) and (h).

The County asserts that there are no manuals, written guidelines, or objective standards to assist the decisionmaker in determining whether to place a warning sign or indicator at the bridge. The County supported its reasoning with affidavits of two county officials: Frank Hempen, Director of Public Works/County Engineer, and Pamela Madl, Director of Personnel and Risk Management.

The County also emphasizes that Collins presented no specific manuals or guidelines regarding the posting of warning signs. The MUTCD, the County contends, does not address the placement of warning signs under the circumstances of the case at bar. The County submitted an additional affidavit of Hill stating that Barnes did not specifically indicate where rocks were dumped but that Hill had assumed rocks were dumped in the creek where Collins dove. The County also referenced the deposition of Hempen,

who testified that he had no knowledge of the county dumping rocks in the creek at the low-water bridge and, if the County had dumped there, he would have known about it.

The County also relied upon the deposition testimony of Dean Harvey and Barnes, who are primarily responsible for road and bridge maintenance in the Township. According to Harvey, the Township dumped rocks and dirt 500 feet away from the low-water bridge on the edge of the creek along the road to prevent the road from eroding. Harvey was not aware of the County dumping rocks in the creek. Barnes testified that he did not know anything about the County or the Township dumping rocks in the creek. Barnes denied telling Hill that the County had dumped rocks and debris in the creek.

The County also argued that (1) it had no duty to warn Collins not to dive or swim; (2) it was unaware that anyone would dive or swim in the creek; and (3) Collins was a trespasser or, in the alternative, a licensee. Consequently, the County only owed Collins a duty to refrain from willfully or wantonly injuring him. The County claimed that there is no evidence of willful and wanton conduct.

The County attempted to refute the allegation that it had knowledge of people swimming in the creek at the low-water bridge site. The County referenced the depositions of Hempen, Harvey, and Barnes. Hempen testified that he had never seen anyone swim or fish at the area in question. Harvey denied knowledge that people were using the area for swimming. Barnes stated that he had seen people fishing and wading around the bridge area. He denied ever having told anyone that he knew people were swimming in the area.

### The Township's Contentions

The Township contended, with reference to the creek bed where Collins was injured, that it had knowledge of neither swimming nor the dumping of rocks or debris. The Township admitted placing large rocks along the road at a spot 500 feet away from the low-water bridge.

The Township argues: (1) It did not exert any control over the bridge (all control over county bridges, including signage, is delegated to the County); (2) it is immune from liability under the

recreational use exception to the KTCA, K.S.A. 75-6104(o); (3) it is immune from liability because the decision to place a warning sign is discretionary; (4) it had no duty to place a warning sign because Collins was a trespasser, or in the alternative, a licensee; and (5) K.S.A. 8-2003 and the MUTCD relate to traffic control, not to individuals diving off a low-water bridge.

## The Trial Court's Ruling

The trial court granted summary judgment to defendants, observing that our Rule 141(b) (1990 Kan. Ct. R. Annot. 110) "requires that a party opposing a motion for summary judgment present evidence setting forth the facts and conditions upon which it relies with specific reference to the discovery documents." Because no transcripts were furnished, the trial court had to rely on documents in the record and attachments to the motions and responses in making its findings.

The trial court stated the following facts were either uncontroverted or interpreted in the light most favorable to Collins:

"a. On July 11, 1987, Plaintiff [Collins] dove off a low-water bridge on a Wakarusa Township road into Washington Creek, striking his head on objects beneath the surface of the water. As a direct result, Plaintiff's neck was broken and he is now a quadriplegic.

"b. Defendant, Douglas County, regularly inspected, maintained and repaired the bridge where Plaintiff was injured.

"c. Defendant, Wakarusa Township, placed large rocks on the edge of the creek along the road at a spot five hundred feet away from the low-water bridge as a means of erosion control.

"d. The Township and/or the County dumped rocks into the pool area where the accident occurred. Although it is confusing from the record what exactly occurred, there is a hearsay affidavit which the Court is considering in the light most favorable to the Plaintiff in making this finding.

"e. The foreman of the Wakarusa Township Road Department supervised the maintenance work done on the road where this accident occurred, drove this road regularly, and observed people swimming in the area on numerous occasions.

"f. All dumping of rocks was done in an effort to keep the area from washing out or eroding during the high water times.

"g. There is no evidence in the record to show that the dumping of the rocks resulted in an inappropriate depth in the creek at the time of Plaintiff's injury."

The trial court found that (1) there was no evidence that either the Township or the County raised or lowered the water level

by dumping rocks; (2) Collins failed to show that if the dumping of rocks raised or lowered the water level, such dumping caused his injuries; (3) the County was immune under the KTCA because the posting of signs was discretionary under the facts of the case; (4) the Township had no responsibility or authority to exercise discretion to place signs on the bridge and, even if it did have such authority, it would be immune because placing such signs is discretionary; and (5) assuming the area was intended or permitted to be used for recreational purposes, which the trial court did not find, there was no evidence of gross and wanton negligence.

### Summary Judgment

A party seeking summary judgment bears a heavy burden. We have repeatedly stated the rules controlling summary judgment. A recent recitation is found in *Hammig v. Ford,* 246 Kan. 70, 72-73, 785 P.2d 977 (1990).

On appeal, we apply the rule that where reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *McGee v. Chalfant,* 248 Kan. 434, Syl. ¶ 1, 806 P.2d 980 (1991).

We have also emphasized the responsibility of a party opposing summary judgment to take steps to provide evidence by way of deposition or affidavits or, if necessary, to request time to make additional discovery. The nonmoving party cannot rely solely upon the pleadings and allegations. The nonmoving party must come forward in opposition with something of evidentiary value. *Willard v. City of Kansas City,* 235 Kan. 655, 657, 681 P.2d 1067 (1984).

K.S.A. 1990 Supp. 60-256(e) states in part:

"When a motion for summary judgment is made and supported as provided in this section, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

Our summary judgment Rule 141 requires the supporting documentation for contentions of fact to be "contained in the court

file and otherwise included in the record." (1991 Kan. Ct. R. Annot. 117.)

Bridge Maintenance—K.S.A. 68-1104

The construction and maintenance of county bridges are governed by the plain language of K.S.A. 68-1104:

"The board of county commissioners shall construct, reconstruct, repair and maintain all county bridges and county culverts located on county roads and township roads . . . . All township culverts shall be constructed, reconstructed, repaired and maintained by the township . . . . [A]ll approaches to culverts and bridges on township roads shall be constructed, reconstructed and maintained by the township."

The trial court found that the Township had no responsibility or authority to place warning signs on the bridge.

Collins contends that K.S.A. 68-1104 gives joint and several responsibility to the Township and the County for the area in question. First, Collins states that his injury began on a county culvert and ended in the creek, which qualifies as an approach to a culvert. K.S.A. 68-1104 places responsibility for maintenance of county bridges and culverts on the county, and the responsibility for maintenance of "approaches to culverts" of township roads on the township. Second, Collins contends there is a factual dispute as to whether the culvert is a county culvert or a township culvert for which the County assumed the maintenance tasks for the Township. If the latter is true, Collins claims the Township may not delegate its responsibility.

The Township reasons that K.S.A. 68-1104 unambiguously places responsibility for maintenance of the low-water bridge on the County and responsibility for maintenance of township culverts and approaches to bridges and culverts on the Township. We agree. If the culvert contained in the county bridge is construed to be a township culvert, as suggested by Collins, the statute would give control of the structure to two entities. The Township asserts it should be presumed that the legislature intended to give exclusive control of the structure to one entity.

K.S.A. 68-1101 defines "bridge" and "culvert" as follows:

"(1) The word 'bridge' shall mean a structure having a clear span of more than twenty (20) feet, measured along the center line of the road between the inside faces of end supports, and multiple-span structures where the

sum of the individual clear spans plus the aggregate width of the intermediate support or supports is in excess of twenty (20) feet;

"(2) the word 'culvert' shall mean any waterway structure not defined as a bridge."

The legislature did not intend to place joint responsibility for the low-water bridge or culvert on the County and the Township. The low-water bridge is either a county bridge, a county culvert, or a township culvert. If it is a county bridge or culvert, the County has sole responsibility for its maintenance. If it is a township culvert, the Township has sole responsibility for its maintenance.

The record contains no measurements or expert testimony applying the K.S.A. 68-1101(1) definition of a bridge. The Township stated in its memorandum in support of summary judgment that the County constructed, inspected, and maintained the low-water bridge, designated as Bridge No. 10.80 N-10.25 E. The Township supported this contention with references to depositions of Hempen and Harvey. In addition, the contention of county control is partially supported by the County's 1984 Bridge Inspection Report attached to Collins' memorandum in opposition to summary judgment. This inspection report lists the length of the low-water bridge as 55 feet. There is no measurement of the "clear span." Neither Collins nor the County refuted the Township's contention that the County maintained the *bridge* under K.S.A. 68-1104.

Collins presents a creative interpretation of K.S.A. 68-1104. The statute assigns responsibility for "all approaches to culverts and bridges on township roads" to the Township. Collins suggests that "all approaches to culverts" includes the creek bed itself (a waterway approach). Collins asserts also that the culvert is a part of the Township road.

If the language of K.S.A. 68-1104 is interpreted as suggested by Collins, the statute would be contradictory on its face, giving control of the culvert to both the County and the Township. Collins' interpretation is flawed because it does not harmonize with the plain language of the statute.

Collins presented no support for his interpretation of the statute. The plain language of the statute controls. The district court

was correct in (1) finding that Collins dove off a low-water bridge, and (2) ruling that the Township had no control over the bridge.

### KTCA—The Discretionary Function and Signing Exceptions

The trial court ruled that the County was immune from liability because the posting of swimming or diving warning signs at the accident site was discretionary under the facts of the case.

The KTCA is an open-ended act making governmental liability the rule and immunity the exception. *Nichols v. U.S.D. No. 400,* 246 Kan. 93, 94, 785 P.2d 986 (1990). Under K.S.A. 75-6103(a), a governmental entity is liable for the negligent or wrongful acts or omissions of its employees acting within the scope of their employment under the same circumstances that a private person would be liable.

Statutory exceptions to liability are found in K.S.A. 75-6104, which provides in part:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

"(e) any claim based upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved;

. . . ;

"(h) the malfunction, destruction or unauthorized removal of any traffic or road sign, signal or warning device unless it is not corrected by the governmental entity responsible within a reasonable time after actual or constructive notice of such malfunction, destruction or removal. Nothing herein shall give rise to liability arising from the act or omission of any governmental entity in placing or removing any of the above signs, signals or warning devices when such placement or removal is the result of a discretionary act of the governmental entity."

The fundamental rule of statutory construction is that the purpose and intent of the legislature govern when the intent can be ascertained from the statute. When construing statutes, legislative intent should be determined from a general consideration of the entire act. *Stauffer Communications, Inc. v. Mitchell,* 246 Kan. 492, Syl. ¶ 1, 789 P.2d 1153 (1990).

A reading of the pertinent provisions of K.S.A. 75-6104 suggests that the legislature gave special attention to traffic or road signs, signals, and warning devices. Subsection (h), the traffic signing

exception, distinguishes between the repair and replacement of existing traffic control devices and the decision to place or remove a traffic control device. *Carpenter v. Johnson*, 231 Kan. 783, 786, 649 P.2d 400 (1982); Westerbeke, *Survey of Kansas Law: Torts*, 33 Kan. L. Rev. 1, 69 (1984).

Collins alleges negligence in the failure to place either a "no diving" or "shallow depth" warning sign or a depth indicator. We have analyzed the failure to place traffic or road signs under both the discretionary function exception (e) and the signing exception (h). See *Finkbiner v. Clay County*, 238 Kan. 856, 714 P.2d 1380 (1986); *Toumberlin v. Haas*, 236 Kan. 138, 689 P.2d 808 (1984); and *Carpenter v. Johnson*, 231 Kan. 783. The relevant question under both exceptions is whether the placement of such a sign or indicator is a discretionary act.

In *Robertson v. City of Topeka*, 231 Kan. 358, 644 P.2d 458 (1982), we concluded that it is the nature and quality of the discretion exercised which should be the focus rather than the status of the employee exercising the discretion. The test is whether the judgment of the governmental employees is of the nature and quality which the legislature intended to put beyond judicial review. 231 Kan. at 361-62.

In *Dougan v. Rossville Drainage Dist.*, 243 Kan. 315, 757 P.2d 272 (1988), we reviewed Kansas and federal case law and concluded that the discretionary function exception is applicable only when no clearly defined mandatory duty or guideline exists. We have recently applied the exception in *Kansas State Bank & Tr. Co. v. Specialized Transportation Services, Inc.*, 249 Kan. 348, 819 P.2d 587 (1991).

In the case at bar, the County stated as uncontroverted facts: (1) The discretionary decision to place a warning sign is made by the County Commission for the County; and (2) there are no manuals or written guidelines to assist the decisionmaker in determining whether to place a warning sign under the circumstances of this case. These two statements were supported by the affidavits of the Director of Public Works/County Engineer and the Director of Personnel and Risk Management.

Collins, in opposing summary judgment, denied the statements. Collins set out as uncontroverted facts: (1) There are manuals and written guidelines for the construction, maintenance,

and repair of low-water bridges/culverts and waterways; (2) there are manuals and written guidelines for the control of erosion in waterways; and (3) due to the existence of these manuals and guidelines, there is no discretion involved in the construction, maintenance, and repair of low-water bridges/culverts. Collins referenced his supplement to his designation of expert witnesses, stating that Dr. David Parr was *expected to testify* that such manuals and guidelines exist.

The County argues that summary judgment was proper because Collins did not controvert the assertion concerning the absence of manuals and guidelines with something of evidentiary value. We agree.

Collins did not meet his burden to controvert the Township/County's statements of uncontroverted facts which were supported by affidavits and depositions. He did not advance a concise statement of conflicting testimony or evidence. Collins did not depose Parr, attach Parr's affidavit, or request time for further discovery. The response designating Parr as an expert witness did not state that Parr expected to testify that there were manuals and guidelines which mandated a warning sign under the facts of this case. It simply stated that Parr was expected to testify that there are manuals and guidelines governing erosion control and construction, repair, and maintenance of low-water bridges/culverts.

The sole allegation of negligence against the County and the Township is failure to place a warning sign or depth indicator at the low-water bridge. The only *evidence* before the trial court was that there were no manuals or guidelines to aid the decisionmaker in determining whether to place a warning sign at the accident site.

K.S.A. 68-1104 imposes the responsibility for bridge maintenance on the County, not the Township. The posting of warning signs is discretionary under the facts of this case. The trial court did not err in granting summary judgment for the Township and the County.

Because our interpretation of K.S.A. 68-1104 and our application of the K.S.A. 75-6104(e), (h) discretionary function and signing exceptions disposes of the appeal, it is unnecessary to address the other issues raised by the parties.

Affirmed.