No. 30,778.

Joseph Kittredge, *Plaintiff*, v. T. B. Boyd, Treasurer of State, etc., et al., *Defendants*.

No. 30,779.

The Meriden Trust and Safe Deposit Company, etc., *Plaintiff*, v. T. B. Boyd, Treasurer of State, etc., et al., *Defendants*.

No. 30,799.

The Old Colony Trust Company, of Boston, Mass., et al., *Plaintiffs*, v. T. B. Boyd, Treasurer of State, etc., et al., *Defendants*.

(20 P. 2d 811.)

 Opinion denying rehearing filed March 27, 1933. (For original opinion see 136 Kan. 692, 18 P. 2d 563.)

M. A. *Gorrill* and *Henry H. Asher,* both of Lawrence, for the plaintiffs; *Thomas Amory Lee,* of Topeka, of counsel.

*Roland Boynton,* attorney-general, *Everett E. Steerman,* assistant attorney-general, and *Ernest E. Blincoe,* attorney for the Kansas State Tax Commission, for the defendants.

The opinion of the court was delivered by

Dawson, J.: In a motion for a rehearing, counsel for defendants reargue their contention that some sort of action other than mandamus should have been brought against defendant T. B. Boyd as an individual and not as state treasurer, and cases from other jurisdictions not fundamentally different from those at bar are again cited to that effect. Counsel argue that some of our precedents cited in our opinion should not be regarded as controlling here. We think they are. In discussing defendant Boyd as a mere stakeholder counsel studiously omit the adjective "official," which is requisite, in our opinion, to precisely define his status. Why were the protested moneys paid to Boyd rather than to some other state functionary? Because Boyd was state treasurer, and he received those moneys under color of his office. When a state treasurer or any county treasurer receives money paid under protest in temporary obedience to a statute of disputed validity, he does not receive it in his individual capacity. Moreover, it is ordinarily his duty to accept payment under protest, and it was Treasurer Boyd's duty to do so

in the cases at bar. This is Kansas law and Kansas practice, and precedents from jurisdictions where the law is different are of no consequence.

Counsel for defendants suggest other legal questions which they think we should settle in these cases:

1. It is asked "what decision this court might render . . [if] the state treasurer had placed these funds, even though they be paid under protest, in the general revenue fund and had become a part of the general revenue and subject to appropriation and disbursement as other funds reaching the general revenue fund of the state."

It seems to us that it only needs space to state that question to demonstrate that it could not properly be answered in this litigation. Even in a case where a mere declaratory judgment is sought, an actual controversy must exist before this court or the district court would have jurisdiction to make a binding adjudication concerning it. (R. S. 60-3127; *West v. City of Wichita,* 118 Kan. 265, 234 Pac. 978; *Garden City News v. Hurst,* 129 Kan. 365, 282 Pac. 720.)

2. In the motion for a rehearing it is said:

". . . It is conceded that the objection raised by the state that this inheritance tax money cannot be repaid without an express appropriation made by law, as provided in article 2, section 24 of the constitution, is correct."

No such concession appears in our opinion, and we cannot follow the argument of counsel predicated thereon.

3. We are urged to distinguish between a right to recover a tax paid under a statute which at the time of payment had been held to be constitutional by the state and federal supreme courts "and the right to recover a tax which has been paid under a statute which has been passed upon by the supreme court, and at the time of the payment said law was attacked on account of the unconstitutionality thereof and later was held unconstitutional by the courts."

Without discussion of such niceties, it is sufficient to observe that these plaintiffs paid *under protest,* and no prior adjudications to which they were not parties could by any possibility be binding on them.

4. Counsel ask the court to state precisely what the state tax commission is expected to do in view of our decision. In original proceedings in mandamus in this court, while judgment must necessarily go for plaintiff or defendant and the *pro forma* order usually is "The writ is allowed" or "The writ is denied," the usual practice when a state officer or state board is the defendant is not to issue

any writ at all. The court's judgment and opinion are accepted as a rule to guide official action and there the matter ends. In *Martin, Governor, v. Ingraham*, 38 Kan. 641, 17 Pac. 162, the practice in such cases was discussed and earlier cases, including that of *State, ex rel., v. St. John, Governor*, 21 Kan. 591, were reviewed:

"In that case an alternative writ of mandamus was allowed. At first the defendant's counsel filed an answer disputing the jurisdiction of the court, but afterward the governor, by his counsel, expressly waived all question of jurisdiction, and the governor himself also personally desired that the court should hear and determine the case without reference to any question of jurisdiction, stating that he would obey the decision of the court, whatever it might be. The court heard and determined the case, and awarded a peremptory writ of mandamus; but no such writ was ever issued, as the governor immediately proceeded to act in accordance with the decision of the court, which rendered the writ unnecessary." (p. 646.)

See, also, *Bishop v. Fischer*, 94 Kan. 105, 115, 145 Pac. 890; *Estey v. Holdren*, 126 Kan. 385, 389, 267 Pac. 1098.

5. It is further urged that plaintiffs had received credit on their federal estate tax by reason of their payments of these illegal state taxes, and that fact is urged as a reason why the state should now withhold the money which does not belong to it. That reason is not good. The federal government is abundantly able to look after its own interests, and defendants need have no concern therewith.

6. The court is also urged to say what provision of the statute of limitations, if any, should control in proceedings to procure the return of illegal taxes paid under protest. Since these proceedings were promptly begun and diligently prosecuted this question of law is not involved in these cases and cannot be decided herein.

7. Defendants do present one question which inheres in the present cases and which should be decided. That is the question whether interest should be paid on the protested sums during the time the state treasurer has held them pending an authoritative adjudication on the legality of the statute. In our opinion the state treasurer served as official stakeholder for all parties concerned. He has no fund to pay interest. While we have held that plaintiffs had no adequate remedy at law, and in consequence they could rightfully bring mandamus in these cases, mandamus was not the only extraordinary remedy available. They might have invoked other extraordinary procedural redress—an injunction or mandatory injunctive proceeding in the district court, and could thereby have procured an adjudication on the state's claim to these illegal tax

exactions without having paid over the money at all. The procedure they did follow was simpler and more expeditious, but it does not entitle them to interest on their funds while they have been in the hands of the state treasurer.

A rehearing on these matters would serve no purpose, and it is therefore denied.

THIELE, J., not participating.