No. 64,309

STATE OF KANSAS, *ex rel.*, ROBERT T. STEPHAN, ATTORNEY GENERAL, *Appellee*, v. EVERETT L. JOHNSON, *Appellant*.

(807 P.2d 664)

Opinion filed March 1, 1991.

*Clark V. Owens*, of Wichita, argued the cause and was on the brief for appellant.

*John W. Campbell*, deputy attorney general, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: The State of Kansas, through Attorney General Robert T. Stephan, filed this quo warranto action seeking the removal of Everett L. Johnson from the office of board member, District No. 10, Kansas State Board of Education (Board). The district court entered an order granting the State's motion for summary judgment, and respondent appealed. The Court of Appeals affirmed the district court's granting of summary judgment. *State ex rel. Stephan v. Johnson*, 14 Kan. App. 2d 542, 795 P.2d 411 (1990). We granted review.

Article 6, § 2 of the Kansas Constitution provides for a State Board of Education to supervise public schools, educational institutions, and all the educational interests of the state except those delegated to the state board of regents. The Board consists of 10 members with overlapping terms. These members represent 10 geographic districts as provided for by the legislature. Kan. Const. art. 6, § 3(a).

On April 8, 1989, Richard J. Peckham resigned his position as the duly elected board member for District No. 10, Kansas State Board of Education. On May 9, 1989, a district convention was held pursuant to K.S.A. 25-3902a, consisting of the Republican chairman and vice-chairman of each of the counties comprising District No. 10 of the Board. At the convention, respondent, a tenured faculty member of Wichita State University, was elected to fill the vacant position. The governor received a certificate of respondent's election on May 11, 1989, and his appointment became effective seven days thereafter. Respondent filed his oath of office with the secretary of state on June 6, 1989.

As a tenured faculty member of Wichita State University, respondent is a state employee in the unclassified service. K.S.A. 75-2935(1)(f). He resides within District No. 10 of the Board.

An attorney general's opinion was issued on May 26, 1989, concluding that K.S.A. 25-1904, which prohibits a state employee from serving as a member of the Board, bars respondent from service on the Board. Att'y Gen. Op. No. 89-65. Respondent refused to relinquish his claim to the position for District No. 10. Respondent has been acting as a Board member for District No. 10 since the filing of his oath of office on June 6, 1989.

On June 7, 1989, the State of Kansas, through the attorney general, filed a petition in quo warranto in Shawnee County District Court, requesting an order "ousting and removing" Johnson from his position on the Board pursuant to K.S.A. 60-1201 *et seq.* On June 9, 1989, another convention was held in District No. 10, and Gwendel A. Nelson was elected as Board member. The attorney general filed an amended petition on June 27, 1989, adding Nelson as a party, alleging Nelson's election was null and void and requesting the court to find that a vacancy existed in the position. On June 28, 1989, the State filed a motion for suspension of public officer. This pleading asked the court to

suspend both Nelson and respondent from performing duties of office until a decision was made on the amended petition in quo warranto. Respondent's answer to this motion challenged the constitutionality of K.S.A. 25-1904.

On July 7, 1989, the district court found that respondent was a de facto member of the Board, that he had raised a bona fide legal question challenging the legality of K.S.A. 25-1904, that no public interest would be harmed by allowing him to continue in the position, and that Nelson had relinquished any claim to the position. The court denied the motion for temporary suspension.

The State moved for summary judgment on July 14, 1989. Respondent filed a counter-motion for summary judgment on July 26, 1989, acknowledging that the facts were undisputed but challenging the constitutionality of K.S.A. 25-1904. The district court granted the State's motion for summary judgment on August 22, 1989. An order specifically dismissing Nelson from the case was entered by the district court on November 9, 1989, to clarify the status of the case. The Court of Appeals affirmed the decision of the district court in finding that the provisions of the Kansas Constitution did not provide qualifications for the Board that prohibited the legislature from enacting additional qualifications.

At oral argument before this court, counsel for respondent Johnson informed this court that, before the Court of Appeals decision was filed on July 6, 1990, respondent filed for election to the present position on the Board; he was defeated in the primary election. Thereafter, on August 16, 1990, he resigned his position as Board member from District No. 10. For that reason, we must first consider if this action is moot and should therefore be dismissed.

We have consistently followed the well-established rule that this court will not consider or decide a question on appeal when it appears that any judgment we might render would be unavailing. *Dickey Oil Co. v. Wakefield,* 153 Kan. 489, 111 P.2d 1113 (1941). There must be an existing controversy requiring adjudication and not an abstract proposition requiring an advisory opinion. The rule as to moot questions is one of court policy, founded upon the proposition that, except when under some statutory duty to do so, courts do not sit for the purpose of giving opinions upon abstract propositions not involving actual contro-

versy presented for determination. *Knowles v. State Board of Education*, 219 Kan. 271, Syl. ¶ 2, 547 P.2d 699 (1976).

In *Moore v. Smith*, 160 Kan. 167, 160 P.2d 675 (1945), D. D. Smith was nominated in the primary election to serve as sheriff for the "unexpired" or "short term." At the general election, Keith Moore was elected sheriff for the regular two-year term beginning in January. Following the general election, Moore brought an action to enjoin the county commissioners from certifying Smith as sheriff for the "unexpired" term. The issue was whether the appeal should be dismissed as moot because the alleged short term had expired. We said:

"A 'moot case' has been variously defined. One common definition is that it is a case in which determination of an abstract question is sought when in reality there is no actual controversy existing. Another common definition is that it is one which seeks a judgment upon some matter which if rendered could not have any practical effect upon any then-existing controversy. (27 Words and Phrases, Perm. ed. 536, 538.) The fact that an issue has become moot does not necessarily mean that the appellate court is without jurisdiction to determine it. The rule is one of court policy, founded upon the sound proposition that except when under some statutory duty to do so courts do not sit for the purpose of giving opinions upon abstract propositions not involving actual controversy presented for determination.

"The rule as to moot issues requires further statement at this point. The fact that the only relief directly sought upon appellate review can no longer be given, owing to expiration of a period of time involved or to other change in circumstances following judgment, is by no means always sufficient to justify dismissal of the appeal. One of the well-established conditions, as to dismissal, is stated in 4 C.J.S. 1945-1948, as follows:

"'The appeal . . . will be dismissed . . . *unless . . . the judgment, if unreversed, will preclude the party against whom it stands as to a fact vital to his rights.*' (Italics supplied.) Similarly, it is said in 3 Am. Jur. 310: 'It is not every change in circumstances which might be said to render the case a moot one so as to require a dismissal of the appeal or error proceeding, however. Thus, there will be no dismissal . . . whenever the judgment, if left unreversed, will preclude the party against whom it is rendered as to a fact vital to his rights, even though the judgment, if affirmed, may not be directly enforceable by reason of a lapse of time or change of circumstances.' " 160 Kan. at 170-71.

In *NEA-Topeka, Inc. v. U.S.D. No. 501*, 227 Kan. 529, 531-32, 608 P.2d 920 (1980), we concluded the issue before the court was moot. We said:

"Appellate review is dependent upon the existence of an actual case or controversy, (*Thompson v. Kansas City Power & Light Co.*, 208 Kan. 869, 871, 494 P.2d 1092, *cert. denied* 409 U.S. 944 [1972]), and none is present in a moot case. This court is not statutorily empowered to render advisory opinions. *Knowles v. State Board of Education*, 219 Kan. 271, 278, 547 P.2d 699 (1976); *Thompson v. Kansas City Power & Light Co.*, 208 Kan. 869. We also find the court is without constitutional authority to render advisory opinions. Such an opinion would go beyond the limits of determining an actual case or controversy and would violate the doctrine of separation of powers. 16 C.J.S., Constitutional Law § 150."

An exception to this general rule is recognized where the case involves a question of public interest even though it has become moot as to the parties involved.

5 Am. Jur. 2d, Appeal and Error § 768, pp. 210-11, provides:

"It is a well-established rule that an appellate court may retain an appeal for hearing and determination if it involves questions of public interest even though it has become moot so far as the particular action or the parties are concerned or though the parties desire that it be dismissed. The decision as to whether to retain a moot case in order to pass on a question of public interest lies in the discretion of the court and generally a court will determine a moot question of public importance if it feels that the value of its determination as a precedent is sufficient to overcome the rule against considering moot questions."

What questions are of public interest are discussed at Annot., 132 A.L.R. 1185, 1188-89:

"In the first place it must be remembered that the general rule is to dismiss an appeal which has become moot or which the parties desire to have dismissed, and that the retention of such an appeal because of the public interest therein is an exception to that rule. Hence the inclination of the courts is to refuse dismissal on this ground only under exceptional circumstances and where the public interest clearly appears.

. . . .

"The phrase 'public interest' as used in this connection means something more than that the individual members of the public are interested in the decision of the appeal from motives of curiosity or because it may bear upon their individual rights or serve as a guide for their future conduct as individuals.

. . . .

"Courts are more inclined to retain an appeal on the ground of public interest if the questions involved are likely to arise frequently in the future unless they are settled by a court of last resort. This appears both from cases which mention the fact that the question will arise frequently as a reason for hearing and deciding the appeal and from cases in which the fact

that the question is not likely to arise again or at least not often is given as a reason for dismissing the appeal."

However, this court has not been so inclined. In *Moore* we said:

"We conclude that although the injunction feature is no longer of consequence the motion to dismiss should be denied. Let it be made clear that this conclusion is not at all based upon the ground that a question of public interest is involved. We have repeatedly applied the rule against deciding moot cases even though questions of great public interest were involved. (*Dickey Oil Co. v. Wakefield*, 153 Kan. 489, 111 P.2d 1113, and cases there cited.) The motion is denied upon the ground that dismissal would unjustly affect vital rights of the appellant in a controversy not fully determined." 160 Kan. at 176.

In *Thompson v. Kansas City Power & Light Co.*, 208 Kan. 869, 871-73, 494 P.2d 1092, *cert. denied* 409 U.S. 944 (1972), appellant challenged the validity of the eminent domain statute as an unconstitutional delegation of legislative powers, a violation of appellant's right to due process, and a denial of equal protection of the law. We said:

"The constitutional issues raised by appellants are forcefully presented. However, appellee argues this project was completed on December 19, 1969, and the entire line has been in operation for over a year and by reason thereof all questions other than the value of the property taken have become moot.

"We have frequently said that it is the duty of the courts to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles which cannot affect the matter in issue before the court. (*Diehn v. Penner*, 169 Kan. 63, 216 P.2d 815; *Bumm v. Colvin*, [181 Kan. 630, 312 P.2d 827]; also see *Oil Workers Unions v. Missouri*, 361 U.S. 363; 4 L. Ed. 2d 373, 80 S. Ct. 391.) The position of this court was clearly stated in *Bumm v. Colvin*, [181 Kan. at 636]. We said:

" 'The rule that when it appears by reason of changed circumstances between the commencement of an action and the trial thereof, a judgment would be unavailing as to the real issue presented, the case is moot and judicial action ceases, is not only applicable to actions seeking to enforce common-law remedies (*Asendorf v. Common School District No. 102*, supra; *Andeel v. Woods*, supra; *Dick v. Drainage District No. 2*, supra), but is equally applicable to actions under our declaratory judgment statute (G.S. 1949, 60-3127). This is manifest by the rule itself, by the express terms of the statute, and by our decisions which hold that in order to obtain an adjudication of any question of law under the declaratory judgment act, an actual controversy must exist (*Kittredge v. Boyd*, 137 Kan. 241, 242, 20 P.2d 811; *Klein v. Bredehoft*, 147 Kan. 71, 73, 75 P.2d

232; *City of Cherryvale v. Wilson,* 153 Kan. 505, 509, 112 P.2d 111; *State, ex rel., v. State Highway Comm.,* 163 Kan. 187, 182 P.2d 127), and when any legal question becomes moot, judicial action ceases (*State, ex rel., v. Insurance Co.,* 88 Kan. 9, 10, 127 Pac. 761; *State v. Allen,* 107 Kan. 407, 408, 191 Pac. 476; *State, ex rel., v. State Highway Comm.,* 163 Kan. 187, 182 P.2d 127).

" 'The soundness of that general rule seems obvious. If, when the action was commenced, the petition presented an actual controversy between plaintiff and the City and the commissioners justiciable under the declaratory judgment statute, clearly, on November 12, 1956, that controversy did not exist because of plaintiff's concession of changed circumstances. That being true, a judgment would be unavailing as to the real issue presented and the case was moot, hence judicial action ceased.'

. . . .

"Appellants also claim the constitutional issues are subject to determination even if proximate relief is not available. The argument is that there are existing questions of public interest which should be answered to provide guidance for the courts in future condemnations. It has never been the policy of this court to write advisory opinions. In *Bumm,* constitutional issues were raised but we adhered to our rule that an actual controversy must exist. We do not feel inclined to depart from a rule so strongly embedded in our decisions."

We conclude that the issues raised by respondent in this appeal are moot and the appeal should therefore be dismissed. In dismissing this appeal, we make no determination as to the merits of the issues raised by respondent in this appeal or as to the judgment entered by the Court of Appeals.

The appeal is dismissed.

ABBOTT, J., not participating.

HERD, J., dissenting: This case should not be dismissed as moot. It does not fit the usual mootness case where the issue is a narrow controversy between two parties who have resolved their disagreement. This case is much broader. It involves a constitutional issue of significance to Kansas public policy and thus does not fall under the general rule on case and controversy. See Annot., 132 A.L.R. 1185, 1188-89. See *Thompson v. Kansas City Power & Light Co.,* 208 Kan. 869, 494 P.2d 1092, *cert. denied* 409 U.S. 944 (1972). Everett Johnson's resignation does not render the constitutional issue moot. It survives the parties' private acceptance of the judgment. There was a case and controversy

in both the trial court and the Court of Appeals. Both courts decided the issue. Those decisions are the law if we persist in the majority's dismissal.

I dissent for the foregoing reasons and because in my opinion the lower court decisions are wrong. Article 6, § 2 of the Kansas Constitution provides for a State Board of Education which has general supervision over all public schools, educational institutions, and educational interests of the State of Kansas, except educational functions delegated to the Board of Regents. Thus, all state educational policy in Kansas is set by the Board of Education, except as to four-year state colleges and universities.

After adoption of the education article, the legislature enacted K.S.A. 25-1904. It prohibits all state employees, school district employees and officers, and community college employees and officers from serving as members of the Board. This prohibition is the nexus of this case. Everett L. Johnson's position on the Board was challenged because he was a tenured professor at Wichita State University, a state employee. Johnson argues the statute is unconstitutional. The district court and the Court of Appeals ruled the statute constitutional. The majority dismissal in effect affirms those rulings.

In my opinion, K.S.A. 25-1904 is fatally flawed on an equal protection analysis under either the Fourteenth Amendment to the United States Constitution or its counterpart in the Kansas Constitution. Therein, all persons are guaranteed the right to equal protection of the law. K.S.A. 25-1904 designates state employees, teachers, and school district and community college administrators as a separate class and denies this class the right to serve on the State Board of Education. This is a denial of an important right. Statutory classification is discriminatory. It is permissible, however, only under specific rules which require the legislation to have a rational basis for a legitimate governmental end. *Farley v. Engelken,* 241 Kan. 663, 740 P.2d 1058 (1987).

The class of excluded persons includes all teachers and administrators in the state college and university systems and all teachers and administrators in public schools and community colleges. These persons are the best qualified people in Kansas to make public education policy. The rationale for the exclusion is that this class of persons has a potential conflict of interest sitting

on the State Board of Education. The weakness of this argument is easily discerned. None of the excluded persons is prohibited from serving on the State Board of Regents or on local school boards, both of which present a greater possibility for conflict of interest to educators than does service on the State Board of Education. The State Board of Education sets no salaries or tenure for teachers while local school boards and the Board of Regents do. Thus, we see the conflict of interest argument has no merit. The ban on public educators from serving on the State Board of Education is comparable to barring farmers from serving on the State Board of Agriculture; barbers from serving on the State Barber Examiners Board, or doctors from serving on the Board of Healing Arts. Obviously, there is no rational basis for excluding public educators from serving on the State Board of Education.

We should not dismiss this appeal and should hold K.S.A. 25-1904 unconstitutional and void.